UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          )    NO. *3:09-CR-028*
                                  )
                v.                )
                                  )
MICHAEL T. CONAHAN and            )
MARK A. CIAVARELLA, JR.,          )
                                  )
                Defendants.       )

FILED
SCRANTON

JAN 2 6 2009

PER _____
       DEPUTY CLERK

I N F O R M A T I O N

Count 1

18 U.S.C. §§ 1343, 1346 and 2)
(Honest Services Wire Fraud)

THE UNITED STATES ATTORNEY CHARGES:

A. THE PARTIES

1.  At all times material to this information, the defendants
MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. were judges of the
Court of Common Pleas for Luzerne County, Pennsylvania.  Between
approximately January of 2002 and January of 2007, MICHAEL T.
CONAHAN served as President Judge for Luzerne County.  Between
approximately 1996 and June of 2008, MARK A. CIAVARELLA, JR.,
served as Judge of the Juvenile Court for Luzerne County.  In
approximately January of 2007, MARK A. CIAVARELLA, JR. was named
President Judge for Luzerne County.

2.  As judges of the Court of Common Pleas, the defendants
MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. owed a fiduciary
duty to the citizens of the Commonwealth of Pennsylvania and to the
Judiciary of the Commonwealth of Pennsylvania and were required to
file an annual statement of financial interests with the
Administrative Office of the Pennsylvania Courts, reporting the

source of any income, direct or indirect. The Administrative Office of the Pennsylvania Courts maintains offices in Cumberland County, Middle District of Pennsylvania and Philadelphia County, Eastern District of Pennsylvania.

### C.    THE PURPOSE OF THE DEFENDANTS

3.    From in or about June, 2000, the exact date being unknown to the United States Attorney, to on or about April 30, 2007, in the Middle District of Pennsylvania, and elsewhere, the defendants,

MICHAEL T. CONAHAN and
MARK A. CIAVARELLA, JR.,

aided and abetted by each other and by other persons known and unknown, devised and intended to devise a material scheme and artifice to defraud the citizens of the Commonwealth of Pennsylvania and the Judiciary of the Commonwealth of Pennsylvania and to deprive those citizens of their right to the honest services of MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR., as judges of the Court of Common Pleas for Luzerne County, performed free from deceit, favoritism, bias, self-enrichment, self-dealing, concealment, and conflict of interest.

4.    In furtherance of the scheme and artifice to defraud, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. abused their positions as judges of the Court of Common Pleas for Luzerne County by accepting compensation from individuals and organizations doing business with the Court.

### D.    MANNER, MEANS AND METHODS OF THE DEFENDANTS

5.    Between approximately June of 2000 and January 1, 2007, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.

2

abused their positions and violated the fiduciary duty they owed to the citizens of the Commonwealth of Pennsylvania and to the Judiciary of the Commonwealth of Pennsylvania by secretly deriving more than $2,600,000 in income, in addition to the compensation to which they were lawfully entitled, in exchange for official actions and anticipated official actions. The actions from which they derived improper income included, but were not limited to: entering into agreements guaranteeing placement of juvenile offenders with PA Child Care, LLC (hereinafter referred to as "PA Child Care"); taking official action to remove funding from the Luzerne County budget for the Luzerne County juvenile detention facility; facilitating the construction of juvenile detention facilities and an expansion to one of those facilities by PA Child Care and Western PA Child Care, LLC (hereinafter referred to as "Western PA Child Care); directing that juvenile offenders be lodged at juvenile detention facilities operated by PA Child Care and Western PA Child Care; summarily granting motions to seal the record and for injunctive relief in a civil case related to PA Child Care; and, through their actions, assisting Pa Child Care and Western PA Child Care to secure agreements with Luzerne County worth tens of millions of dollars for the placement of juvenile offenders, including an agreement in late 2004 worth approximately $58,000,000.

6.  The defendants employed a number of schemes in an attempt to hide the income they received including, but not limited to, causing income to pass through intermediaries and causing false

3

records to be created.

7.   In approximately June of 2000, the Defendant MARK A. CIAVARELLA, JR., whose duties then included presiding over juvenile proceedings as a judge of the Court of Common Pleas for Luzerne County, had discussions with an attorney who had a law practice in Luzerne County, hereinafter referred to as "PARTICIPANT #1," who was interested in constructing a juvenile detention facility in Luzerne County.  Defendant MARK A. CIAVARELLA, JR. introduced PARTICIPANT #1 to a contractor (hereinafter referred to as "PARTICIPANT #2") who was a friend of defendant MARK A. CIAVARELLA, JR., for the purpose of locating land for the juvenile facility and for constructing the facility.

8.   PARTICIPANT #1 and another person, doing business as PA Child Care, acquired land in Luzerne County and entered into an agreement with PARTICIPANT #2 to construct a juvenile detention center to be operated by PA Child Care.

9.   On or about January 29, 2002, defendant MICHAEL T. CONAHAN, acting in his capacity as President Judge of Luzerne County, signed a "Placement Guarantee Agreement" between PA Child Care and the Court of Common Pleas for Luzerne County to house juvenile offenders at the PA Child Care facility.  The "Placement Guarantee Agreement" provided that the Court of Common Pleas for Luzerne County would pay PA Child Care the annual "Rental Installment" sum of $1,314,000 and stipulated that "[t]he obligation of the Court to make payment of the Rental Installments shall be absolute and unconditional."

4

10. In or about December, 2002, defendant MICHAEL T. CONAHAN, acting in his capacity as President Judge of Luzerne County, took official action to remove funding from the Luzerne County budget for the Luzerne County juvenile detention facility.

11. In or before January of 2003, DEFENDANT MICHAEL T. CONAHAN and DEFENDANT MARK A. CIAVARELLA, JR. arranged to receive a payment in the amount of $997,600 in connection with the roles they played as judges in accomplishing the construction of the PA Child Care juvenile detention facility.

12. In order to conceal the $997,600 payment to Defendants CONAHAN and CIAVARELLA, JR., PARTICIPANT #1 and PARTICIPANT #2 signed a written "Registration and Commission Agreement" prepared by PARTICIPANT #2 and backdated to February 19, 2002, which purported to be an agreement for PARTICIPANT #2 to pay a broker's fee of $997,600 to PARTICIPANT #1. In fact, however, a large portion of the money was intended to be paid to defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.

13. MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. engaged in a series of financial transactions, over time, designed to conceal the $997,600 payment made to them. On January 21, 2003, $610,000 was wire transferred by PARTICIPANT #2 to an attorney trust account of an attorney other than PARTICIPANT #1. The remaining $387,600 was wire transferred by PARTICIPANT #2 to a bank account under the control of PARTICIPANT #1.

14. Thereafter, on January 28, 2003, the $610,000 in the attorney trust account was wire transferred to a bank account of

5

Beverage Marketing of PA, Inc., a business entity controlled by
Defendant MICHAEL T. CONAHAN.

15.   In a series of financial transactions thereafter, a
portion of the $610,000 payment was passed from defendant MICHAEL
T. CONAHAN to defendant MARK A. CIAVARELLA, JR.  For example, on or
about January 28, 2003, the defendant MICHAEL T. CONAHAN directed
that $330,000 of the $610,000 be wire transferred to a bank account
controlled by the defendant MARK A. CIAVARELLA, JR.; on or about
April 30, 2003, the defendant MICHAEL T. CONAHAN directed that an
additional $75,000 of the $610,000 be wire transferred to a bank
account controlled by the defendant MARK A. CIAVARELLA, JR.; on or
about July 15, 2003, the defendant MICHAEL T. CONAHAN directed that
an additional $75,000 of the $610,000 be wire transferred to a bank
account under the control of the defendant MARK A. CIAVARELLA, JR.;
on or about August 13, 2003, the defendant MICHAEL T. CONAHAN
directed that an additional $25,000 of the $610,000 be wire
transferred to a bank account under the control of a third party;
and, on or about August 20, 2003, the defendant MICHAEL T. CONAHAN
directed that an additional $105,000 of the $610,000 be transferred
to a bank account under the control of the defendant MICHAEL T.
CONAHAN.

16.   To conceal the payments to defendants MICHAEL T. CONAHAN
and MARK A. CIAVARELLA, JR., Defendant MICHAEL T. CONAHAN directed
that false entries be made in the books and records of Beverage
Marketing of PA, Inc.

17.   To further conceal the $997,600 payment made to MICHAEL

6

T. CONAHAN and MARK A. CIAVARELLA, JR., a portion of the $387,600 wire transfer made by PARTICIPANT #2 to PARTICIPANT #1 on January 28, 2003, was paid to the Defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. in a series of financial transactions which occurred over time. One of those transactions occurred on or about August 29, 2003, when a check in the amount of $326,000, drawn on a bank account under the control of PARTICIPANT #1 was deposited into a bank account maintained in the name of another person but under the control of defendant MICHAEL T. CONAHAN.

18. Due to the success of the juvenile detention facility operated in Luzerne County, PARTICIPANT #1 and his partner, doing business as Western PA Child Care, constructed a juvenile detention facility in western Pennsylvania. PARTICIPANT #2, the same contractor who built the facility in Luzerne County, was employed to construct the Western PA Child Care facility. In July of 2005, upon completion of construction, a $1,000,000 payment was made to the Defendants CONAHAN and CIAVARELLA by PARTICIPANT #1. To conceal the payment, it was made to the Pinnacle Group of Jupiter, LLC, a business entity owned by other persons but controlled by Defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.

19. In order to conceal the payment to Defendants CONAHAN and CIAVARELLA, JR., PARTICIPANT #1 and PARTICIPANT #2 signed a written "Registration and Commission Agreement" prepared by the PARTICIPANT #2 which purported to be an agreement for PARTICIPANT #2 to pay a broker's fee of $1,000,000 to PARTICIPANT #1. In fact, however, the money was wire transferred by PARTICIPANT #2 to a bank account

of the Pinnacle Group of Jupiter, LLC, a business entity owned by
other persons but controlled by MICHAEL T. CONAHAN and MARK A.
CIAVARELLA, JR.

20.  PARTICIPANT #1 and his partner, doing business as PA
Child Care, constructed an addition to the juvenile detention
facility in Luzerne County.  PARTICIPANT #2, the same contractor
who built the facility, was employed to complete the expansion
project and, in February of 2006, upon completion of construction
of the addition, a $150,000 payment was made to Defendants MICHAEL
T. CONAHAN and MARK A. CIAVARELLA, JR.  To conceal the payment, it
was made to the Pinnacle Group of Jupiter, LLC, a business entity
owned by other persons but controlled by Defendants MICHAEL T.
CONAHAN and MARK A. CIAVARELLA, JR.

21.  In order to conceal the payment to Defendants CONAHAN and
CIAVARELLA, JR., PARTICIPANT #1 and PARTICIPANT #2 signed a written
"Registration and Commission Agreement" prepared by the PARTICIPANT
#2 which purported to be an agreement for the PARTICIPANT #2 to pay
a broker's fee of $150,000 to PARTICIPANT #1.  In fact, however,
the money was wire transferred by PARTICIPANT #2 to a bank account
of the Pinnacle Group of Jupiter, LLC, a business entity owned by
other persons but controlled by MICHAEL T. CONAHAN and MARK A.
CIAVARELLA, JR.

22.  In approximately February of 2003, when construction of
the PA Child Care juvenile detention facility was completed,
defendant MARK A. CIAVARELLA, JR., in his capacity as a juvenile
court judge, began directing that youthful offenders be sent to

8

that facility.  Between approximately February of 2003 and January 1, 2007, the Defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. received from PARTICIPANT #1 hundreds of thousands of dollars in payments for their past and future official actions relating to PA Child Care and Western PA Child Care and took steps to conceal and disguise the nature, location, source, ownership and control of the money paid by PARTICIPANT #1.

23.    Some of the payments were made by checks drawn on one or more bank accounts under the control of PARTICIPANT #1 and were made payable to the Pinnacle Group of Jupiter, LLC.  The payments included, but were not necessarily limited to, the following: $18,000 paid on or about January 13, 2004; $52,000 paid on or about January 13, 2004; $78,000 paid on or about February 15, 2004; $75,000 paid on or about February 15, 2004; $47,000 paid on or about February 15, 2004; $75,000 paid on or about April 30, 2004; and $25,000 paid on or about April 30, 2004.

24.    To conceal the payments to defendant MICHAEL T. CONAHAN and defendant MARK A. CIAVARELLA, JR., PARTICIPANT #1 made false notations on the checks and defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. directed that false entries be made in the books and records of Pinnacle Group of Jupiter, LLC.

25.    In addition to payments by check, some of the payments were made by wire transfers made from one or more bank accounts under the control of PARTICIPANT #1 and were transferred to an account under the control of the Pinnacle Group of Jupiter, LLC. The payments included, but were not necessarily limited to, the

following: $120,000 transferred on July 12, 2004; and $100,000
transferred on September 23, 2004.

26.   In order to conceal the more than $2,600,000 in unlawful
payments they received, the defendants MICHAEL T. CONAHAN and MARK
A. CIAVARELLA, JR. knowingly and intentionally filed materially
false annual statements of financial interests with the
Administrative Office of the Pennsylvania Courts in which they
failed to disclose the source of these payments and in which they
failed to disclose their financial relationship with PARTICIPANT
#1, PARTICIPANT #2, PA Child Care and Western PA Child Care, all of
which were material matters.

E.   THE RIGHT TO HONEST SERVICES

27.   At all times material to this information, the Defendants
MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. were elected judges
of the Court of Common Pleas for Luzerne County and as such were
public officials.   The defendants MICHAEL T. CONAHAN and MARK A.
CIAVARELLA, JR. owed a fiduciary duty to the public not to realize
personal financial gain through their office other than
compensation provided by law, to refrain from conduct that
constitutes a conflict of interest or that constitutes seeking or
accepting improper influence, to recuse themselves from matters in
which they have a conflict of interest, and to file a truthful and
complete annual statement of financial interests, reporting the
sources of all income, direct or indirect.

28.   One source of the fiduciary duty owed by the defendants
was imposed by constitutional law, including, Article 5, §§ 17(b)

10

and 17(c) of the Pennsylvania Constitution.

29.    Another source, among others, of the fiduciary duty owed by the defendants, independent of statutory law, arose from the defendants' positions as judges of the Court of Common Pleas, including requirements of the Pennsylvania Code of Judicial Conduct and Administrative Orders of the Pennsylvania Supreme Court regarding matters related to Judges of the Court of Common Pleas. Part of the fiduciary duty owed by the defendants included the duty arising from their positions as judges to disclose material information affecting their ability to engage in impartial decision-making.

F.    MANNER, MEANS AND METHODS OF THE DEFENDANTS

30.    It was a part of the scheme and artifice to defraud that the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. knowingly and intentionally filed materially false annual statements of financial interests with the Administrative Office of the Pennsylvania Courts in which they failed to disclose the source of income they received and in which they failed to disclose their financial relationship with PARTICIPANT #1, PARTICIPANT #2, PA Child Care and Western PA Child Care, which were material matters.

31.    The defendant MICHAEL T. CONAHAN made the following materially false filings with the Administrative Office of the Pennsylvania Courts on or about the following dates:

| Date | Description of Filing |
|------|----------------------|
| April, 2004 | Materially false annual statement of financial interests for calendar year 2003 submitted to the Pennsylvania |

11

|  | Administrative Office of the Courts |
|---|---|
| March, 2005 | Materially false annual statement of financial interests for calender year 2004 submitted to the Pennsylvania Administrative Office of the Courts |
| February, 2006 | Materially false annual statement of financial interests for calendar year 2005 submitted to the Pennsylvania Administrative Office of the Courts |
| April, 2007 | Materially false annual statement of financial interests for calendar year 2006 submitted to the Pennsylvania Administrative Office of the Courts |

32.   The defendant MARK A. CIAVARELLA, JR. made the following materially false filings with the Administrative Office of the Pennsylvania Courts on or about the following dates:

| Date | Description of Filing |
|---|---|
| April, 2004 | Materially false annual statement of financial interests for calendar year 2003 submitted to the Pennsylvania Administrative Office of the Courts |
| March, 2005 | Materially false annual statement of financial interests for calendar year 2004 submitted to the Pennsylvania Administrative Office of the Courts |
| April, 2006 | Materially false annual statement of financial interests for calendar year 2005 submitted to the Pennsylvania Administrative Office of the Courts |

12

March, 2007                    Materially false annual
                               statement of financial interests
                               for calendar year 2006 submitted
                               to the Pennsylvania
                               Administrative Office of the
                               Courts

33.   It was further a part of the scheme and artifice to
defraud that the defendants MICHAEL T. CONAHAN and MARK A.
CIAVARELLA, JR., acting on behalf of the Court of Common Pleas for
Luzerne County in matters in which they had discretionary decision-
making authority, knowingly and intentionally issued written, oral
and wire communications which were materially false to the extent
that the defendants did not disclose their conflict of interest and
their financial relationship with PARTICIPANT #1, PARTICIPANT #2,
PA Child Care and Western PA Child Care, which were material
matters.

34.   It was further a part of the scheme and artifice to
defraud that the defendants MICHAEL T. CONAHAN and MARK A.
CIAVARELLA, JR., acting on behalf of the Court of Common Pleas for
Luzerne County in matters in which they had discretionary decision-
making authority, knowingly and intentionally issued reports and
statements to the Administrative Office of the Pennsylvania Courts
which were materially false to the extent that the defendants did
not disclose their sources of income and their financial
relationship with PARTICIPANT #1 PARTICIPANT #2, PA Child Care and
Western PA Child Care, which were material matters.

35.   It was further a part of the scheme and artifice to
defraud that the Defendant MICHAEL T. CONAHAN entered into
agreements guaranteeing placement of juvenile offenders with PA

13

Child Care and took official action to remove funding from the
Luzerne County budget for the Luzerne County juvenile detention
facility, effectively closing a county-run youth detention center.
The Defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.,
through their actions, facilitated the construction of juvenile
detention facilities and an expansion to one of those facilities by
PA Child Care and Western PA Child Care and directed that juvenile
offenders be lodged at juvenile detention facilities operated by PA
Child Care and Western PA Child Care.  Through their actions, the
defendants assisted Pa Child Care and Western PA Child Care to
secure agreements with Luzerne County worth tens of millions of
dollars for the placement of juvenile offenders, including an
agreement in late 2004 worth approximately $58,000,000.  It was
further a part of the scheme and artifice to defraud that, on
numerous occasions, accused juvenile offenders were ordered
detained by the defendant MARK A. CIAVARELLA, JR. even when
Juvenile Probation Officers did not recommend detention.  The
defendant MARK A. CIAVARELLA, JR., and others operating at his
behest, also exerted pressure on staff of the Court of Common Pleas
to recommend detention of juvenile offenders.  On some occasions,
probation officers were pressured to change recommendations of
release to recommendations of detention.  The foregoing actions, as
well as other actions, of the defendants MICHAEL T. CONAHAN and
MARK A. CIAVARELLA, JR. related to matters in which they had
discretionary decision-making authority.  The defendants MICHAEL T.
CONAHAN and MARK A. CIAVARELLA, JR. took these actions, and other

14

actions, without recusing themselves from matters in which they had a conflict of interest, and without disclosing to parties involved in court proceedings, their conflict of interest and the financial relationship that existed between the defendants and PARTICIPANT #1, PARTICIPANT #2, PA Child Care and Western PA Child Care, which were material matters.

36.  It was further a part of the scheme and artifice to defraud that the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. violated their duties of independence, impartiality and integrity in the exercise of their discretionary actions on behalf of the Court of Common Pleas for Luzerne County by failing to recuse themselves from acting in matters in which they had a material conflict of interest and in failing to disclose to parties appearing before the court their conflict of interest and their financial relationship with PARTICIPANT #1, PARTICIPANT #2, PA Child Care and Western PA Child Care, which were material matters.

37.  It was further a part of the scheme and artifice to defraud that the defendant MARK A. CIAVARELLA, JR. adopted procedures in juvenile court, including procedures adopted for a "specialty court." The adoption of these procedures was accomplished through the discretionary decision-making authority of the defendant MARK A. CIAVARELLA, JR. The adoption of these procedures created the potential for an increased number of juvenile offenders to be sent to the juvenile detention facilities of PA Child Care and Western PA Child Care.  The defendant MARK A. CIAVARELLA, JR. took these actions without disclosing to the

parties before the court his conflict of interest and the financial relationship that existed between the defendant MARK A. CIAVARELLA, JR. and PARTICIPANT #1, PARTICIPANT #2, PA Child Care and Western PA Child Care, which were material matters.

38.  It was further a part of the scheme and artifice to defraud that the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. otherwise conducted the affairs of the Court of Common Pleas, in matters in which they had discretionary decision-making authority, without disclosing their conflict of interest and financial relationship with PARTICIPANT #1, PARTICIPANT #2, PA Child Care and Western PA Child Care, knowing that these were material matters that should have been disclosed to parties appearing before the court and to other persons and entities.

### G.  EXECUTION OF THE SCHEME

39.  On or about each date listed below, in the Middle District of Pennsylvania and elsewhere, the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR., aided and abetted by each other, for the purpose of executing the above-described material scheme and artifice to defraud and deprive the citizens of Luzerne County and of the Commonwealth of Pennsylvania of their right to the honest services of the defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR., transmitted and caused to be transmitted by means of wire communication in interstate commerce, the following writings, signals and sounds:

| Date | Wire Transmission |
|---|---|
| July 12, 2004 | Electronic funds transfer of $120,000 transferred from an |

16

|                    | account of Vision Holdings, Inc. to an account of the Pinnacle Group of Jupiter, LLC. |
|--------------------|---------------------------------------------------------------------------------------|
| September 23, 2004 | Electronic funds transfer of $100,000 transferred from an account of Vision Holdings, Inc. to an account of Pinnacle Group of Jupiter, LLC. |
| July 15, 2005      | Electronic funds transfer of $1,000,000 transferred from an account of Mericle Construction, Inc. to an account of Pinnacle Group of Jupiter, LLC. |
| February 3, 2006   | Electronic funds transfer of $150,000 transferred from an account of Mericle Construction, Inc. to an account of Pinnacle Group of Jupiter, LLC. |

In violation of Title 18, United States Code, §§ 2, 1341 and 1346.

Count 2

18 U.S.C. § 371
(Conspiracy to Defraud the United States)

THE UNITED STATES ATTORNEY FURTHER CHARGES:

40.   The United States Attorney hereby incorporates by reference, as though fully set forth herein, each of the allegations contained in Count 1 of this Information.

41.   Between on or about January 1, 2002, and on or about April 15, 2007, in the Middle District of Pennsylvania, and elsewhere, the defendants,

MICHAEL T. CONAHAN and
MARK A. CIAVARELLA, JR.,

did knowingly, intentionally and willfully combine, conspire, confederate, and agree together with one another, and together with other persons known and unknown to the United States Attorney, to defraud the United States by impeding, impairing, obstructing and defeating the lawful Government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment and collection of the revenue, to wit, income taxes.

OVERT ACTS

42.   In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the Middle District of Pennsylvania and elsewhere:

1.   On or about January 21, 2003, the defendants caused PARTICIPANT #2 to wire transfer $610,000 to the bank account of an attorney;

18

2.  On or about January 28, 2003, the defendants caused an attorney in Schuylkill County, Pennsylvania to wire transfer $610,000 to an account of Beverage Marketing of Pennsylvania, Inc.;

3.  On or about January 28, 2003, the defendant MICHAEL T. CONAHAN caused $330,000 to be wire transferred from a bank account of Beverage Marketing of Pennsylvania, Inc. to a bank account under the control of the defendant MARK A. CIAVARELLA, JR.;

4.  On or about April 30, 2003, the defendant MICHAEL T. CONAHAN caused $75,000 to be wire transferred from a bank account of Beverage Marketing of Pennsylvania, Inc. to a bank account under the control of the defendant MARK A. CIAVARELLA, JR.;

5.  On or about July 15, 2003, the defendant MICHAEL T. CONAHAN caused $75,000 to be wire transferred from a bank account of Beverage Marketing of Pennsylvania, Inc. to a bank account under the control of the defendant MARK A. CIAVARELLA, JR.;

6.  On or about August 13, 2003, the defendant MICHAEL T. CONAHAN caused $25,000 to be wire transferred from a bank account of Beverage Marketing of Pennsylvania, Inc. to a bank account under the control of a third party;

6.  On or about August 13, 2003, the defendant MICHAEL T. CONAHAN caused $25,000 to be wire transferred from a bank account of Beverage Marketing of Pennsylvania, Inc. to a bank account under the control of a third party;

7.  On or about August 20, 2003, the defendant MICHAEL T. CONAHAN caused $105,000 to be wire transferred from a bank account of Beverage Marketing of Pennsylvania, Inc. to a bank account under

19

the control of defendant MICHAEL T. CONAHAN;

8.   To conceal the payments to defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR., Defendant MICHAEL T. CONAHAN directed that false entries be made in the books and records of Beverage Marketing of PA, Inc. between on or about January 1, 2002, and on or about April 15, 2007;

9.   On or about January 20, 2004, the defendants caused $18,000 to be deposited in a bank account of the Pinnacle Group of Jupiter, LLC which was falsely characterized as "Rent Prepay";

10.   On or about January 20, 2004, the defendants caused $52,000.00 to be deposited in a bank account of the Pinnacle Group of Jupiter, LLC which was falsely characterized as "Rent Marine Prepay";

11.   On or about February 24, 2004, the defendants caused $47,000 to be deposited into a bank account of the Pinnacle Group of Jupiter, LLC which was falsely characterized as "Slip Rental Fees";

12.   On or about February 24, 2004, the defendants caused $78,000 to be deposited into a bank account of the Pinnacle Group of Jupiter, LLC which was falsely characterized as "Reserving lease";

13.   On or about February 24, 2004, the defendants caused $75,000 to be deposited into a bank account of the Pinnacle Group of Jupiter, LLC which was falsely characterized as "Rental Feb, Mar, Apr";

14.   On or about May 3, 2004, the defendants caused $75,000 to

20

be deposited into a bank account of the Pinnacle Group of Jupiter, LLC which was falsely characterized as "Lease Expenses April May June";

15. On or about May 3, 2004, the defendants caused $25,000 to be deposited into a bank account of the Pinnacle Group of Jupiter, LLC which was falsely characterized as "Dock Expenses Related April May June";

16. On or about July 12, 2004, the defendants caused $120,000 to be wire transferred to a bank account of the Pinnacle Group of Jupiter, LLC;

17. On or about September 23, 2004, the defendants caused $100,000 to be wire transferred to a bank account of the Pinnacle Group of Jupiter, LLC;

18. On or about July 15, 2005, the defendants caused $1,000,000 to be wire transferred to a bank account of the Pinnacle Group of Jupiter, LLC;

19. On or about February 3, 2006, the defendants caused $150,000 to be wire transferred to a bank account of the Pinnacle Group of Jupiter, LLC;

20. Between on or about January 1, 2002, and on or about April 15, 2007, defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR. provided information to their respective tax return preparers that contained material omissions and mis-classifications;

21. Between on or about April 15, 2004, and on or about May 21, 2007, defendants MICHAEL T. CONAHAN and MARK A. CIAVARELLA, JR.

21

caused to be prepared, subscribed to, and filed with the Internal Revenue Service, materially false tax returns, namely, IRS forms 1040 and 1040X relating to tax years 2003 through 2006;

22.  As a further overt acts, the United States Attorney incorporates by reference, as though fully set forth herein, Count 1 of this information.  Count 1 constitutes a separate overt act in furtherance of the conspiracy.

In violation of Title 18, United States Code, §371.


_Martin C. Carlson_
_____
MARTIN C. CARLSON
UNITED STATES ATTORNEY

_January 26, 2009_
_____
DATE